634 F.2d 1211
 211 U.S.P.Q. 22
 M-C INDUSTRIES, INC., a Kansas Corp., Plaintiff-Appellant,
v.
PRECISION DYNAMICS CORP., a California Corporation,
Defendant-Appellee.
M-C INDUSTRIES, INC., a Kansas Corp., Plaintiff-Appellee,
v.
PRECISION DYNAMICS CORP., a California Corporation,
Defendant-Appellant.
M-C INDUSTRIES, INC., a Kansas Corp., Plaintiff-Appellee,
v.
PRECISION DYNAMICS CORP., a California Corporation,
Defendant-Appellant.
 Nos. CA 78-2199, 78-2261 and 78-2316.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1980.
Decided Dec. 29, 1980.
 
 Joseph L. Lazaroff, Rowayton, Conn., argued for M-C Industries.
 Donald M. Cislo, Mahoney, Schick & Cislo, Thomas P. Mahoney, Mahoney, Schick & Cislo, Santa Monica, Cal., for Precision Dynamics Corp.
 Appeal from the United States District Court for the Central District of California.
 Before TRASK and FLETCHER, Circuit Judges, and SOLOMON,* District Judge.
 TRASK, Circuit Judge:
 
 
 1
 M-C Industries, Inc. (M-C) and Precision Dynamics Corp. (Precision), are corporations involved in the manufacture and sale of plastic identification bracelets for use by institutions such as hospitals with a need for a convenient, inexpensive, and permanent means of identifying individuals. In 1971, Precision instituted an action in federal district court, alleging that each of the claims of its identification bracelet patent 3,059,359 (the '359 side tab patent) and one claim of its bracelet patent 2,954,621 (the '621 end tab bracelet) were infringed by M-C and its sales personnel from 1960 until 1971.[1] M-C counter-claimed for a declaratory judgment that both Precision patents were invalid.
 
 
 2
 After an extensive trial, the district judge held that the '359 side tab patent was valid and had been infringed by M-C. The district court also adjudged that the '621 end tab patent was neither valid nor infringed. Finally, the district court found that two M-C sales promoters, named as individual defendants in Precision's action, did not infringe either Precision patent. M-C appeals from that portion of the district court's judgment that declares the '359 side tab patent valid. Precision cross-appeals from the district court's determinations that the '621 end tab patent was invalid and that M-C sales personnel did not infringe either patent.
 
 
 3
 * For a number of years, affixing hospital bracelets to patients' arms required the use of tools of some type or was similarly inconvenient. In the late 1950's, the increasing use of plastics led to a rash of patent applications, including those presently in dispute, on a variety of plastic bracelets featuring increased convenience.
 
 
 4
 All three bracelets have the same basic structure including the following common elements: a plastic strip, with an identification pocket at one end and a plurality of adjustment and fastening holes at the other end; a plastic fastener comprised of two detent halves with the male half on the strap body and the female half on a tab or flap which articulates with the strip body at some point near the male detent; and, a method of fastening the bracelet whereby the strip is wrapped around the patient's arm, an appropriate hole is placed over the male detent and the female half is closed down upon the male half-permanently locking the bracelet around the patient's arm. Twenty-one other prior art references were cited. Of these, however, the Polzin '592 bracelet, however, is most pertinent.
 
 II
 
 5
 The ultimate question of patent validity is one of law. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). In particular, whether or not an invention is "obvious" is a question of law. See Walker v. General Motors Corp., 362 F.2d 56 (9th Cir. 1966). And, although a patent is entitled to a presumption of validity, see 35 U.S.C. § 282, it has been observed that the standards of patentability applied by the Patent Office vary from those applied by the courts due in part to the "free rein often exercised by Examiners in their use of the concept of 'invention.' " Graham v. John Deere Co., supra, 383 U.S. at 18, 86 S.Ct. at 694.
 
 
 6
 The obviousness or nonobviousness of the bracelets to each other must be determined against a background of three factual inquiries: (1) the scope and content of the prior art; (2) differences between the prior art and the claim at issue; and (3) the level of ordinary skill in the art. Id. at 17, 86 S.Ct. at 693. See also Palmer v. Orthokinetics, Inc., 611 F.2d 316 (9th Cir. 1980). The findings of the district court with respect to these inquiries are binding on appeal unless clearly erroneous. Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1272 (9th Cir.), cert. denied, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).
 
 
 7
 An additional consideration is added to these standards of review by the fact that the '359 patent, as was conceded in oral argument, is a "combination patent"-it combines old elements in a different way by hinging the tab on the side of the bracelet body. Consequently, there is added to this court's review the "requirement that the patent produce an unusual or surprising result in order to be nonobvious." Kamei-Autokomfort v. Eurasion Automotive Products, 553 F.2d 603, at 608 (9th Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977). This more severe test should be utilized to assist us in determining whether a combination patent is nonobvious, but does not replace the requirements of Graham v. John Deere Co., supra, enumerated above. See Palmer v. Orthokinetics, Inc., supra, 611 F.2d at 324 and n.17.
 
 
 8
 The district court did not apply the "unusual or surprising result" test nor did it clearly set forth the three step factual background required by Graham v. John Deere. The record does reveal, however, that the district court did sufficiently examine the prior art and the level of skill in that art. See Palmer v. Orthokinetics, Inc., supra, 611 F.2d at 319. We must now apply the appropriate standards of review to the determinations of the district court.
 
 A.
 
 9
 The primary issue presented by M-C's appeal is the validity of the '359 side tab bracelet patent. M-C argues that it is invalid. M-C's basic contention is that '359 is invalid because it was obvious given the teachings of the prior art.
 
 
 10
 In assessing the advances of the '359 bracelet over the prior art, the district court erroneously attributed various advances to the '359 patent which had actually first been achieved by the Polzin '592 patent and other prior art.[2] Furthermore, in its findings concerning the obviousness of the '359 side tab design, the district court erroneously concluded that the failure of the prior art claims to discuss a lateral position for the tab made such positioning non-obvious.[3] Thus, the district court apparently believed that the prior art must suggest the change made in the new design in order to make the new design obvious to one skilled in the art. This, of course, is not the case. A device may solve commercial problems in the prior art in a manner not suggested by the claims of the prior art but which would nevertheless be obvious to one skilled in the art.[4]
 
 
 11
 We believe the validity of the '359 patent is controlled by this court's decision in Kamei-Autokomfort v. Eurasian Automotive Products, supra. In Kamei-Autokomfort, a patent was challenged on grounds of obviousness. The patent was for a plastic steering wheel cover with a porous foam core composition and an inner plastic skin to resist tears. The resulting cover was definitely an improvement and enjoyed some commercial success. This court, however, reversed the district court and declared the improvements obvious. The court stated:
 
 
 12
 What we have here is "an improved product but not an innovatively different one.... We see the development and refinement of an old concept ... but not an inventive or new approach to the problem." Rex Chainbelt, Inc. v. Harco Products, Inc., 512 F.2d 993, 1000 (9th Cir.), cert. denied, 423 U.S. 831 (96 S.Ct. 52, 46 L.Ed.2d 49) (1975).
 
 
 13
 Kamei-Autokomfort, supra, 533 F.2d at 609. The same description applies to Precision's '359 end tab bracelet. In order to solve commercial problems in the prior art, the designer of the '359 bracelet moved the hinge location of the tab to the side of the bracelet body.[5] That this change is merely an obvious recombination of old elements is made clear by the Supreme Court's decision in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), in which the Court stated:
 
 
 14
 Courts should scrutinize combination patent claims with a care proportioned to the difficulty of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly.
 
 
 15
 The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability.
 
 
 16
 Id. at 152-53, 71 S.Ct. at 130-31 (emphasis supplied). The '359 bracelet realigns elements known to the prior art, but does so without altering their function or producing any surprising or unusual result. The act of recombining the elements of the prior art so that the tab protrudes laterally was, at the time, quite obvious to those individuals skilled in the art and aware of the commercial problems of the prior art. Consequently the '359 side tab patent is obvious, neither innovative nor ingenious, and should be invalidated.[6] Cf. Will Ross v. Precision Dynamics Corp., 332 F.2d 772 (9th Cir. 1964) (Polzin '592 patent's addition of flap on end of bracelet is "obvious").
 
 B.
 
 17
 On cross-appeal Precision assigns error to all of the bases upon which the district court concluded that the one disputed claim of the '621 bracelet patent was neither valid nor infringed. For the reasons discussed above, which are equally applicable to the '621 bracelet, we conclude that the district court was correct in its determination that the challenged claim of the '621 bracelet was obvious in light of the prior art. Consequently, we do not reach any of the other issues presented by Precision's cross-appeal from this part of the district court's judgment.
 
 
 18
 Precision also appeals from the district court's conclusion that two M-C sales promotion employees did not infringe its '359 patent. The record supports M-C's contention that its sales personnel neither sold infringing bracelets nor did anything which ever induced any M-C customers to buy bracelets. The district court's determination that there was no infringement was not clearly erroneous. Furthermore, as we have determined that neither the '359 patent nor the disputed claim of the '621 patent are valid, the individual defendants could not be found to have infringed either patent in any event. The judgment of the district court is consequently AFFIRMED in part, REVERSED in part and REMANDED for entry of judgment consistent with this opinion.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Both Precision patents have now expired
 
 
 [2]
 Various advances attributed to the '359 bracelet by the district court's findings 14 and 15 were achieved in whole or in part by the prior art. Finding number 14 states:
 
 
 [14]
 At the time of the invention of the bracelet of the 3,059,359 patent in suit, for hospital identification purposes it was necessary to utilize letter beads strung on a string or plastic bands which required separate tools, such as a punch and riveting tool, in order to affix the band around the wrists of a patient or the like in a secure manner
 Finding number 15 states:
 
 
 [15]
 The '359 patent bracelet overcame the prior art difficulties and for the first time provided an identification bracelet that was easily manufactured, readily secured, eliminated the need for installation tools and provided a secure and tamper-proof method of identification
 For the most part these same advances were achieved by the Polzin '592 patent. To the extent that the district court's findings indicate otherwise, they are clearly erroneous.
 
 
 [3]
 The district court's Finding Number 27 states:
 
 
 [27]
 So far as the claims of the '359 patent are concerned, the prior art did not suggest the use of the side tab so as to make it obvious to a person skilled in the art. Neither of Polzin '592 or '796 discusses lateral positioning of a tab at all. Both Polzin '592 and '796 involve different locations of the male stud and the presentation of the male stud to easy access and engagement by the female stud
 
 
 [4]
 If, in fact, the claims of the prior art had suggested or discussed the use of the side tab, the '359 patent would not only have been obvious, its manufacture possibly would have infringed the prior patent. The district court apparently equated the inquiry involved when the issue is infringement of a valid patent with the quite different issue of obviousness
 
 
 [5]
 The '359 bracelet is easier to fasten than the Polzin '592 bracelet because the tab is out of the line of sight when aligning the proper adjustment hole with the male stud and because any excess strap does not have to be folded over or cut off before the female stud can be fastened onto the male detent half. Interestingly, the '621 bracelet can claim these same advantages over the Polzin '592 bracelet, yet the district court found the '621 bracelet to be obvious
 
 
 [6]
 Having determined that the '359 patent should be declared invalid on grounds of obviousness, we need not reach any other issue raised by M-C challenging the validity of that patent